Deadebick, J.,
delivered the opinion of the Court.
Defendants, Walt, Johnson & Co., were indebted to complainants on numerous acceptances, dated respectively January 30th and February 7th, 1861, and by note dated 6th August, 1860, and in the aggregate exceeding $10,000.
*243 The original bill was filed in January, 1866, attaching certain lots in the city of Memphis, which the bill alleges were purchased by Walt and Johnson at $15,000 .and paid for by them, and the title to which was conveyed to their wives at their instance in 1862, to defraud their creditors. An amended bill was filed in July, 1866, alleging that Walt and Johnson had purchased other property in and near the city of Memphis, which they had paid for and had conveyed to their wives, with like fraudulent intent, and that said Walt and Johnson had no property left wherewith to pay their debts, but were now utterly insolvent, and praying to have said several voluntary and fraudulent conveyances set aside, and to have the said lots •sold for the satisfaction of their said debts.
The defense set up against the relief prayed is, that the husbands were indebted to their wives for separate property of the wives used by them, and for loans •and advances made by the wives to the husbands, and the land purchased and conveyed to the wives was intended to be fro tanto in satisfaction of said indebtedness.
The Chancellor decreed against Johnson and wife, setting aside the conveyance to her and subjecting the lands so conveyed to the satisfaction of the complainant’s debts. But he decreed in favor of the right of Mrs. Walt to the land conveyed to her, upon the ground that she had a separate estate, and from the income and profits of which she loaned her husband money from time to time to be returned by him, and that the settlement of the property upon her, was *244 made in pursuance of the understanding, and as a return of the sums so loaned him out' of her separate-estate. To the extent of the sums so loaned, the said-settlement was declared valid, and an account was ordered, to ascertain the amount of ' such loans and advancements.
From this decree the complainants have appealed,, and Johnson and wife also prayed an appeal, and thirty days’ time was given within which to execute-bonds for said appeals. The complainants gave bond,, but defendants Johnson and wife failed to give bond, and the decree stands in full force against them, and the cause is here only as between the complainants and Walt and wife.
The marriage settlement was executed 7th January, 1861, and was signed by Walt and wife and D. M. Currin, trustee, to whom the property therein mentioned was conveyed, to be held by him for the benefit of said Mary L. Walt, wife of the said James ft. Walt.
The said James ft., by said deed of settlement,, relinquishing “ all interest in said estate that by marital right or otherwise he may have acquired in and to the property, real and personal and mixed.” The property consisted as described in the deed, of eleven slaves, and an undivided interest in several tracts of land, five certain notes in which said Mary L. is described as having an interest as distributee or legatee of her late father — the aggregate amount of said several notes being about $lj550, and cash received from' her former guardian $1,407.
*245 It is upon the conveyance or relinquishment above •described that the Chancellor decreed the existence of -a separate estate in said Mary L., and that her husband was indebted to her for the incomes and profits •thereof.
Walt and wife were married in December, 1859, •and moved to Memphis during the same month, and brought with them three of the slaves conveyed, and ’most probably before the expiration of the year 1860, the other slaves were taken to Memphis, some hired •out and others employed in the service of Walt and wife. Mrs. Walt was examined as a witness, and states that the $1,407 received from her guardian was received by her before the deed of trust was made, and was loaned to her husband; that the three negroes taken to Memphis soon after her marriage were sold 'before the war for $4,100. Two of these were men, and they and two other men she had engaged as dray-men. She states that she never had the notes described in the deed of trust, as she terms it, in her possession, but she supposes they were collected, but declined answering the question as to her reason for supposing they were collected. She states that no lands were sold, but that she received rents for her land, hire for her negroes, and had drays running, and let her husband have the money to use in his business, received from these sources.
Mrs. Walt, in her deposition, shows that all the slaves were in possession of herself and husband before the deed to Currin, which was executed 7th January, 1861, more than twelve months after the marriage; *246 and it is also most probable that the $1,407 in money was received from her guardian and went into the possession of her husband before the deed was executed, and that the notes or her share of them, whatever it might be, was in like manner so reduced into, •the possession of her husband, and so of the rents previously accrued.
This being so, the slaves themselves became, by-operation of law, his property, so that the hire, including $1,550 which she states the draymen made,, would also be his, as well as the money received for the slaves sold, which Mrs. Walt states was paid to-her husband; and so also of the other, and money received of the guardian, and for rents received by him. It does not appear that the alleged agreements, by the husband to borrow of and repay the wife the several sums mentioned in the deposition of Mrs. Walt,, had reference to any separate property or money belonging to her; but on the contrary, we are of opinion that the marital rights of - the husband had already attached, and that the husband could not denude himself of such rights to the prejudice of his creditors,, by acknowledgment of the right of his wife, or by promising to repay, her: 1 Head, 347.
But it is further insisted that, conceding the conveyance to the wife to be voluntary, yet that Walt &, Johnson had abundant assets for the payment of their debts after the settlement of the sum of $15,000 on their wives — and the testimony of C. W. Johnson is. relied upon to establish this defense. It is well settled that a husband not indebted, may make a volun *247 tary settlement on his wife, if not made with a view to making debts in the future. Or if his indebtedness should be inconsiderable in comparison with the value of his remaining property, such settlement would be valid.
But the fact of reserved means being abundant, should satisfactorily appear. The witness Johnson speaks of the assets and liabilities appearing upon the books of Walt, Johnson & Co., and says from these his recollection is, that in April, 1862, their assets were about $75,000 or $80,000, and -their liabilities about $45,000 or -$50,000.
This estimate of assets included notes, accounts,, sugar, cotton, wine, and a general assortment of groceries. He says he thinks they held some three or four hundred bales of cotton at some point in Mississippi — that he does not recollect the amount of wines or other merchandise, but there was a considerable quantity: nor was he able to state whether the debtors were solvent.
Upon this vague and indefinite statement of the-assets, no reliable opinion or estimate can be formed of their value — much less can we say they were ample-to pay the $45,000 or $50,000 of estimated indebtedness,, after the $15,000 or $16,000 invested for the wines were abstracted. We are of opinion, therefore, that the decree of the Chancellor in favor of Walt and wife was erroneous, and the same will be reversed.
It incidentally appears that Chase and wife had attached the same property attached in this case, previously to the filing of complainants’ bill; and it may *248 be necessary to a just distribution of the fund, that that ease may be settled with this. This cause will, therefore, be remanded to the Chancery Court for the execution of this decree, and such orders and decrees as may be necessary to the adjustment of the equities of all the parties in interest. .